AO 106 (Rev. 04/10) Application for a Search Warrant

FILED

MAY 1 6 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of    )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*    )          Case No.
    )
T-Mobile, headquartered at 4 Sylvan Way, Parsippany,    )          **19MJ2054**
New Jersey 07504, regarding phone number:    )
619-530-5894    )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A, incorporated by reference

located in the _____ District of _____New Jersey_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B, incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952 & 960 | Importation of Narcotics |

The application is based on these facts:
See attached affidavit, incorporated by reference

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Matthew Roman, SA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/16/19

_____
*Judge's signature*

City and state: _____          Magistrate Judge Michael S. Berg
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Matthew Roman, having been duly sworn do hereby state that the following is true to my knowledge and belief.

### A.   Introduction

1.     This affidavit supports an application for a warrant for information associated with T-Mobile telephone number **619-530-5894** (the "**Target Data**"), including subscriber information, telephone toll data, and cell tower information for the period of December 25, 2018 up to and including January 4, 2018. As set forth below, probable cause exists to believe that the **Target Data** contains evidence of Importation of Narcotics, in violation of 21 U.S.C. §§ 952 and 960. The **Target Data** is currently in the possession of T-Mobile, headquartered at 4 Sylvan Way, Parsippany, New Jersey 07504. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government the information further described in Section I of Attachment B.

### B.   Training and Experience

2.     I am a Special Agent and currently employed with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), formerly the U.S. Customs Service. I have held my current position with HSI since September 2015. I am a graduate of the Criminal Investigator Training Program and the HSI Special Agent Training Program at the Federal Law Enforcement Training Center ("FLETC"). During the course of my training at FLETC, I learned the fundamentals of how to conduct criminal investigations including, but not limited to, gathering evidence, preserving a crime scene, and using electronic evidence—all in relation to violations of the United States Code.  From March 2016 to present, my duties have included the investigation of narcotics-related violations of Title 21 of the United States Code and the California Health and Safety Code. I have participated in and conducted investigations of violations of various State and Federal criminal laws, including distribution of controlled substances, use of communication

facilities to commit narcotic offenses, importation of controlled substances, conspiracy to import, and money laundering, all in violation of Titles 18 and 21 of the United States Code and various California criminal provisions. These investigations have resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances, including methamphetamine, cocaine, MDMA, marijuana, fentanyl, and heroin.  Also, these investigations resulted in seizures of illegal drugs, and proceeds from the distribution of those illegal drugs.  Through these investigations and training, I am familiar with the operations of international Drug Trafficking Organizations ("DTO") in various parts of the world, including Mexico.  Additionally, from February 2001 until March 2002 and from March 2002 until September 2015, I was assigned first as a Deputy U.S. Marshal, and then as a Federal Air Marshal. My previous law enforcement duties have also included investigations of violations of Title 18 of the United States Code and Aviation Security.

3.     Based on my experience, I am familiar with the methods used in narcotics-trafficking operations and the trafficking patterns employed by narcotics organizations.  I have also spoken with agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews.  I have become knowledgeable concerning the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking.  I have become familiar with the methods of operation typically used by narcotics traffickers. In preparing this affidavit, I am not only relying upon my knowledge, I have also conferred with other agents and law enforcement personnel, who have significant experience in the area of drug trafficking and importation.

4.     Based on the experience and training I have explained above, I know that narcotics traffickers use one or more telephones to negotiate times, places, and schemes for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances.  For instance, conspiracies involved in the smuggling and trafficking of

2

narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence, including telephone call and toll data, as well as data from the cellular towers communicating with the cellular phone, that indicate the location of the phone.For example, load drivers smuggling controlled substances across the border are often in telephone contact with co-conspirators immediately before and after the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.  Specifically, drug traffickers and their accomplices and/or co-conspirators use cellular telephones in the following ways:

     a.    to have instant access to telephone calls, text, web, and voice messages;

     b.    to actively monitor the progress of their illegal cargo while the conveyance is in transit;

     c.    to more easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

     d.    to direct persons to synchronize an exact drop off and/or pick up time of their illegal cargo;

     e.    to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

     f.    to communicate with persons who transport their narcotics and/or drug proceeds.

     5.    The following is based on my own investigation, oral and written reports by other law enforcement officers, interviews, subpoenaed and public records, database checks, and other investigations. Since this affidavit is for the limited purpose of obtaining a search warrant, I have not included every fact I know about this investigation. Conversations and discussions below are set forth in substance unless noted.

## C.      Facts in Support of Probable Cause

Garza's Arrest on January 3, 2019 in the PT Cruiser

6.      On January 3, 2019, at approximately 11:27 am GARZA (DOB 03/27/1954), a citizen of Mexico, applied for permission to enter into the United States from Mexico through the Otay Mesa, California, Port of Entry (OTM POE) through pre-primary lane #4. GARZA was the driver and sole occupant of a 2007 Chrysler PT Cruiser bearing California license plates CA/8GJM177 (the Cruiser).

7.      At around that same time, Customs and Border Protection (CBP) Officer D. Murray was performing roving canine duties at the OTM POE vehicle pre-primary lanes when his assigned narcotics and detection dog alerted to a trained odor at the rocker panel area at the rear passenger side door of the Cruiser. Officer Murray radioed for assistance.

8.      CBP Officer A. Moir responded to Officer Murray's call for assistance on lane #4. Officer Moir approached the Cruiser and spoke to the driver and sole occupant of the car, GARZA. Officer Moir asked GARZA if she spoke English and GARZA answered no. GARZA stated the Cruiser belonged to her; she had owned the Cruiser for approximately six weeks; and she was going home to Chula Vista. GARZA stated that she was visiting her mom in Tijuana, Mexico. GARZA provided two negative declaration statements, except for approximately $3,300 and personal effects.

9.      Through a translator, Officer Moir then asked GARZA if anyone was forcing her to drive her car across the border against her will. GARZA stated no. Officer Moir asked GARZA if she was responsible for everything in the car, and she responded yes. Officer Moir asked GARZA if she had any repair work or mechanical work done to the vehicle. She answered no. GARZA reiterated that she only had the car for approximately six weeks.

10.      In secondary inspection, CBP Officer F. Ramos screened the Cruiser through the Z Portal and observed anomalies in its rear doors.

11.      CBP Officer M. Norman searched the Cruiser and extracted the following:

- five packages from the vehicle's driver's side rear quarter-panel,

4

- seven packages from the passenger's side rear quarter-panel,
- five packages from the driver's side rear door (underneath crumpled newspaper),
- 23 packages from the passenger's side rear door,
- nine packages from the driver's side dash,
- 13 packages from the firewall,
- nine packages from the air filter box within the engine compartment, and
- two additional packages from the passenger's side rear door, which were longer and flatter in shape than the others.

In total, Officer Norman removed 69 packages from the Cruiser. Each of the packages was labeled with one of the following words: "FX", "VERDE", "COMPA", "PEPA13", or "WOODY". Sixty-seven of the packages were similar in size and shape (small, round, and lumpy). A sample removed from these packages was a crystal-like substance and field-tested positive for methamphetamine. A sample was removed from the two other longer and flatter packages. It was brown and powdery and field-tested positive heroin. The total weight of the 67 packages of methamphetamine was 32.58kgs (71.82lbs). The total weight of the two packages of heroin was 2.62kgs (5.77lbs).

12.    When Officer Norman was pulling out packages from the Cruiser, he also removed a crumpled up portion of the "La Frontera" newspaper from within the Cruiser's driver's side rear door. It was resting on top of concealed packages. Officer Norman also removed a "La Frontera" newspaper from between the driver's seat and console. The date of the "La Frontera" newspaper was January 3, 2019, the day of the seizure.

13.    The next day, January 4, 2019, CBP Officer O. Perez found additional methamphetamine in the Cruiser. Officer Perez was working the OTM POE vehicle secondary lot with his assigned human and narcotics detection canine, screening seized vehicles in the lot. Officer Perez's dog alerted to the driver's side quarter panel of the Cruiser. Officer Perez conducted a cursory inspection of the quarter panel and discovered a package in the panel, so he referred the Cruiser for additional inspection.

14.    CBP Officer J. Lee was assigned to inspect the Cruiser. During this inspection, Officer Lee discovered two additional packages within the vehicle, one package in the passenger's side rear quarter panel and one package in the driver's side rear quarter panel. Officer Lee obtained a sample from the packages, which tested positive for methamphetamine. The total weight of the two additional packages was 0.94kgs (2.07lbs). The updated total number of packages seized from the Cruiser, which tested positive for methamphetamine, was 69, with a total weight of 33.52kgs (73.89lbs).

15.    Papers and effects removed from the Cruiser included a receipt from "SpeeDee" in the name Maria GARZA for an oil change on the Cruiser. The receipt indicated license plate number CA/8GHM177, and was dated December 8, 2018. The receipt also shows a telephone number **619-530-5894**. Additional documentation from "SpeeDee" dated December 6, 2018 reflects a history of service on the Cruiser, in the name of Maria GARZA. Officers also found a receipt for two new tires on December 27, 2018 from "Llantera Voy Y Voy." And the Cruiser also contained a receipt for a Smog Check on November 15, 2018 on the Cruiser.

16.    Papers and effects removed from the Cruiser also included a "Resumen de cuenta" (Account Summary) receipt indicating a telephone number **619-530-5894**.

17.    On January 3, 2019, I obtained a blue cell phone from inside a pocket of GARZA's purse, which was being held as her personal property in the CBP security office at the OTM POE. GARZA did not provide me with the cell phone number during the biographical portion of the interview.  The IMEI obtained from the seized cell phone is 867323041644624; the Device is a Huawei Y6 2018; and the Model is ATU-LX3. Pursuant to a search warrant, forensic agents attempted to review the Huawei phone. Examiners were unable to image the phone, or obtain the phone number.

Garza's Crossings in the Mercedes

18.     During the investigation of the seizure on January 3, 2019, I learned of an additional series of events linking GARZA to a white Mercedes-Benz E320 bearing license plate CA/7ZVS021 (the Mercedes).

19.     On January 3, 2019, I spoke with an individual who identified herself as GARZA's daughter. She told me that GARZA purchased a red PT Cruiser in approximately November 2018. She added that GARZA previously had a Mercedes that was stolen in front of a "Ross" in Chula Vista, CA.

20.     California Department of Motor Vehicle records reflect the following for three cars linked to GARZA:

- The registered owner of the Cruiser is Maria L. GARZA of 2498 Roll Dr. PMB 26, San Diego, CA 92154; and

- The registered owner of the Mercedes is Duarte Gustavo of 259 Date St., Chula Vista, CA 91911.

- The registered owner of a 1999 Acura sedan bearing license plate CA/6YKD299 is Maria L. GARZA of 259 Date Street, Chula Vista, CA 91911.

21.     TECS records reflect that GARZA crossed into the United States 13 times in the Mercedes through the OTM POE between October 8, 2018 and November 8, 2018. Computer generated records checks indicate that GARZA was the sole adult occupant of the Mercedes during those inbound crossings. TECS reflect that GARZA last crossed the Mercedes into the United States through the OTM POE on November 8, 2018.

22.     I reviewed a Los Angeles Interagency Metropolitan Police Apprehension Crime Task Force Report (#18-01-109) (LAPD Report) dated November 9, 2018. The report details that on November 8, 2018, the Mercedes, driven by a lone Hispanic female, entered a parking lot and parked the car near Pacific Coast Highway and Caspain Ave, in the Long Beach area. Moments after the car parked, a Hispanic male approached the Mercedes and met up with the female driver. The female then exited the car and the male entered the driver's seat.

23.    After reviewing a six-pack of photos I provided to a Los Angeles Police detective on the scene, Det. Marc Tarzia of the LA Impact Task Force identified GARZA as the Hispanic female he had seen driving the Mercedes on November 8, 2019.

24.    According to the LAPD Report, LAPD followed the Mercedes to 327 W. Sandison St., Wilmington, CA 90744, where they saw the male driver open the trunk of the Mercedes, retrieve a ratchet, and begin to disassemble various areas of the trunk. Detectives also watched the driver enter both the driver and passenger rear compartments of the Mercedes and disassemble the door panels. The driver and another occupant of the house proceeded to work on the vehicle for approximately an hour. A third individual arrived at the residence and began looking in the trunk and compartment areas of the Mercedes. The third individual moved a trash can from the street and placed it near the passenger compartment area of the Mercedes, to conceal the car from the street. The driver continued to work inside the Mercedes. After a short period, the driver removed a gray suitcase from the rear passenger compartment of the Mercedes and placed it in the trunk. The individuals moved the suitcase, as well as what appeared to be a heavy plastic bag, into the house. At that point, LAPD froze the scene and sought a search warrant. During a search of the address and the Mercedes, officers recovered approximately 63 lbs. of methamphetamine and approximately one lb. of heroin, along with ammunition, and five firearms. The narcotics were discovered inside the gray suitcase, as well as a red Target plastic container and a clear plastic bag, located in a bedroom inside the house. The report reflects that the three individuals were arrested and charged with violations of California H&S 11351, 11352(a), 11378, 11379, 11370.1, and 30305(a)(1).

25.    On November 14, 2018, a police report was filed in Chula Vista concerning the Mercedes. The Chula Vista Police Incident report #1816290 details the Mercedes stolen on 11/12/2018 at 12:45 p.m., with an incident location 628 Palomar St., Chula Vista, CA 91911. A Ross store is located at 628 Palomar St., Chula Vista, CA 91911. GARZA and the registered owner, Duarte Gustavo, are listed in the report. The Chula Vista Police Report provides a telephone number **442-237-0578** as the contact number for Maria

8

1    GARZA (DOB: 3/27/1954). The notes section of the Incident report indicates that the
2    Mercedes was stolen locally and recovered by other jurisdictions.

3            26.    Pursuant to an administrative subpoena, T Mobile provided records and toll
4    information for the phone number **442-237-0578**. The subscriber name on the account is
5    Maria Garsa, with an associated address of 9270 Amy Street, Unit 43, Spring Valley, CA
6    91977. The account activation date is October 1, 2018 and the account termination date
7    was December 13, 2018.

8            27.    Pursuant to an administrative subpoena, T Mobile provided records and toll
9    information for the phone number **619-530-5894**. The subscriber name on the account is
10   Maria Garsa, with an associate address of "9270 Amy St. Wint 27, Spring Valley, CA
11   91977." The account activation date is December 1, 2018 and the account termination date
12   was January 23, 2019.

13           28.    Records received from the Metropolitan Correctional Center for inmate Maria
14   GARZA indicate an address of 9270 Amys St. #43, Spring Valley, CA 91977, with an
15   associated name of "Martinez, PatriciaYbarr." During the biographical portion of her post-
16   arrest interview, GARZA listed Patricia Ibarra as one of her children.

17           29.    On January 10, 2019, Joe Luquin Garza-Spencer and Patricia Ybarra Martinez
18   signed as sureties for a $10,000 personal appearance bond posted on behalf of GARZA.
19   The "Surety Addendum to Appearance Bond" for Patricia Ybarra Martinez states that she
20   is GARZA's daughter, and that she lives at 9270 Amys St., Unit 43, Spring Valley, CA
21   91977. The "Bail Information Sheet" for Maria De La Paz Luquini De GARZA states a
22   home address for GARZA of 9270 Amys St. Unit 43, Spring Valley CA 91977.

23           30.    As part of this investigation, I have received bank account records for a JP
24   Morgan Chase bank account ending in 8311 associated with Maria L. Garza, SSN *** **
25   1273, and an address of 298 Roll Dr. PMB 1130, San Diego, CA 92154. The materials
26   include a signature card listing one individual, Maria L. Garza. Account statements reflect
27   a purchase at a Ross store located at 3055 California Ave., Signal Hill, CA 90755 on

28

November 8, 2018. The distance between the intersection of Caspian Ave. and Pacific Coast Hwy. in Long Beach and the Signal Hill Ross store is approximately four miles.

31.     There are significant similarities between LAPD's seizure on November 8, 2018, and the seizure on January 3, 2019. The two events involve narcotics seized from vehicles crossed by GARZA. Both crossings fall on a Thursday morning. GARZA entered the United States both times at the OTM POE. The November 8, 2018 seizure resulted in approximately 63 packages of methamphetamines and one package of suspected heroin. The January 3, 2019 seizure resulted in approximately 69 packages of methamphetamines and two packages of heroin. Further, it appears that the narcotics were located in similar areas of the vehicles.

32.     Based upon my experience and training, a search of the account associated with the mobile telephone number **619-530-5894** may yield evidence:

a.     tending to indicate efforts to import federally controlled substances from Mexico into the United States;

b.     tending to identify the location  and usage of cellular phones used to facilitate the importation of federally controlled substances from Mexico into the United States;

c.     tending to identify travel to or presence at locations involved in the importation federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

d.     tending to identify the user of, or persons with control over or access to, the subject cellular/mobile telephones; and

e.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

33.     Based on the facts above, there is reason to believe that GARZA used the T-Mobile telephone number **619-530-5894** in connection with the aforementioned narcotics trafficking.

34.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell tower data, also known as "tower/face information" or "cell tower/sector records." Cell tower data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

35.     Based on my training and experience, I know that T-Mobile can collect cell tower data about the telephone number **619-530-5894**.  I also know that wireless providers such as T-Mobile typically collect and retain cell tower data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

36.     Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as T-Mobile typically collect and retain information

1  about their subscribers' use of the wireless service, such as records about calls or other

2  communications sent or received by a particular phone and other transactional records, in

3  their normal course of business.   In my training and experience, this information may

4  constitute evidence of the crimes under investigation because the information can be used

5  to identify the user or users of telephone number **619-530-5894**, and may assist in the

6  identification of co-conspirators and/or victims.

7  **D.     Conclusion**

8      37.    Based on the foregoing, I request that the Court issue the proposed search

9  warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

10      38.    Based upon my training and experience, consultation with other law

11  enforcement officers experienced in narcotics investigations, and all the facts and opinions

12  set forth in this Affidavit, there is probable cause to believe that the **Target Data** to be

13  seized, as set forth above and in Attachment B (incorporated herein), will be found in the

14  location described in Attachment A (incorporated herein), and will contain evidence of

15  Importation of Narcotics, in violation of 21 U.S.C. §§  952 and 960. Therefore, I

16  respectfully request that the Court issue a warrant authorizing me, or another federal law

17  enforcement agent, to order T-Mobile to search its corporate records for the **Target Data**

18  and to order T-Mobile to deliver the **Target Data** listed in Attachment B.

19

20

21                                                     _____

22                                                     Matthew Roman, Special Agent
                                                       Homeland Security Investigations

23

24  Subscribed and sworn to before me

25  this _16_ day of May, 2019.

26

27                                                     _____

28                                                     Hon. Michael S. Berg
                                                       United States Magistrate Judge

## ATTACHMENT A

This warrant applies to records and information associated with the cellular telephone assigned telephone number 619-530-5894, ("the Account"), that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey 07504.

## ATTACHMENT B

### I.   Service of Warrant

The officer executing the warrant shall permit T-Mobile, as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

### II.   Items to be provided by the ISP

All subscriber and/or user information, all electronic mail, images, text messages, histories, phone and VoIP logs, contacts or friend lists, profiles, method of payment, detailed billing records, access logs, backup data, transactional data, and any other files or records associated with the following account and screen name:

**619-530-5894**.

### III.   Information to be Disclosed by the Provider

The search of the data supplied by the ISP pursuant to this warrant will be conducted by the Federal Bureau of Investigation as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the period of December 25, 2018 up to and including January 4, 2019 and to the seizure of:

a. The following information about the customers or subscribers of the Account:

    i. Names (including subscriber names, user names, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

ii. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data transactions;

      iii.  All available Timing Advance Reports, currently known as True Call, to include cell site, sector, and distance from tower, IP session and Data;

      iv.  All available Mobile Data Session and IPv6 reports; and,

      v.  All available voicemails.

which are evidence of violations of 21 U.S.C. § § 952 and 960 Maria LUQUIN De Garza, during the period of December 25, 2018 up to and including January 4, 2019.